UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

EVELYN TORRES,

    Plaintiff,

v.                                      CASE NO. 6:15-cv-1208-Orl-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Plaintiff alleges she became disabled on July 1, 2010. (Tr. 292, 299.) The assigned Administrative Law Judge ("ALJ") held hearings on February 20, 2013 and October 22, 2013, at which Plaintiff appeared without representation. (Tr. 51, 66.) The ALJ found Plaintiff not disabled from July 1, 2010 through October 25, 2013, the date of the decision.[2] (Tr. 30-45.)

In reaching the decision, the ALJ found that Plaintiff's severe impairments included a major depressive disorder, posttraumatic stress disorder ("PTSD"),

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Docs. 14, 17.)

[2] Plaintiff had to establish disability on or before December 31, 2015, her date last insured, in order to be entitled to a period of disability and DIB. (Tr. 30.)

degenerative disc disease ("DDD") of the lumbar spine, and history of left tibial plateau fracture. (Tr. 33.) The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of light work, with "only a moderate ability to respond appropriately to work situations and changes in [a] work setting." (Tr. 37-38.) Then, based on the testimony of a Vocational Expert ("VE"), the ALJ found that Plaintiff was capable of performing jobs that exist in significant numbers in the national economy. (Tr. 44.)

Plaintiff is appealing the Commissioner's decision that she was not disabled from July 1, 2010 through October 25, 2013. Plaintiff has exhausted her available administrative remedies and the case is properly before the Court. The Court has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the Commissioner's decision is **REVERSED** and **REMANDED**.

## I.  Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir.

2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

Plaintiff raises two issues on appeal.  First, Plaintiff argues that the ALJ violated her statutory right to be represented by counsel.  Plaintiff explains that she did not knowingly and voluntarily waive her right to counsel because she was confused or lacked understanding about her rights and the disability process.  Plaintiff further explains that in light of her mental impairment, the ALJ had a heightened duty to ensure that she understood her right to counsel and any waiver thereof.  Plaintiff's second argument is that the ALJ failed to fully and fairly develop the record due to insufficient questioning of the VE.  Plaintiff explains that the ALJ failed to clarify what erosion, if any, her violent outbursts, aggression, impulse issues, and hallucinations would have on the work base established

under the RFC.  The Court will address each argument in turn.

"A Social Security claimant has a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ."  *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995) (per curiam).  The claimant must be notified of her statutory right prior to the hearing.  *Cowart v. Schweiker*, 662 F.2d 731, 734 (11th Cir. 1981).  To effectively waive the right to representation, the claimant must be "properly apprised of her options concerning representation" and must knowingly and intelligently waive the right to counsel.  *Newberger v. Astrue*, 2008 WL 299012, *1 (M.D. Fla. Feb. 1, 2008) (internal citations and quotation marks omitted).  Each claimant must be notified in writing of the options for obtaining counsel, including the availability of free legal services and the statutory cap on attorney's fees.  *Id.* at *2 (internal citations and quotation marks omitted).  Also, "when it appears the claimant may be incompetent or have a mental illness, the ALJ should explain with even greater care the right to counsel as well as the role of an attorney in the hearing to ensure the claimant understands these subjects."  *Id.*

> Further:
>
> Whether or not the applicant is represented, the ALJ still has a duty to develop a full and fair record.  When the right to representation has not been waived, however, the hearing examiner's obligation to develop a full and fair record rises to a special duty.  This special duty requires, essentially, a record which shows that the claimant was not prejudiced by lack of counsel.  In carrying out this duty, the ALJ must scrupulously and conscientiously probe into, inquire of,

> and explore for all the relevant facts. Under this standard, we are not required to determine that the presence of counsel would necessarily have resulted in any specific benefits in the handling of the case before the ALJ. Nevertheless, there must be a showing of prejudice before we will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record.

*Brown*, 44 F.3d at 934-35 (internal citations and quotation marks omitted).

Here, the ALJ held hearings on February 20, 2013 and October 22, 2013. Plaintiff was advised of her right to representation several times prior to the hearings. For example, the Notice of Disapproved Claim, dated January 3, 2012, stated in relevant part:

> **If You Want Help With Your Appeal**
>
> You can have a friend, lawyer, or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your local Social Security office has a list of groups that can help you with your appeal.
>
> If you get someone to help you, you should let us know. If you hire someone, we must approve the fee before he or she can collect it. And if you hire a lawyer, we will withhold up to 25 percent of any past due Social Security benefits to pay toward the fee.

(Tr. 181; *see also* Tr. 186.)

Also, the Commissioner mailed a letter to Plaintiff on February 23, 2012, explaining, among other things, the right to representation in both English and Spanish:

> You may choose to have a representative help you. We will work with this person just as we would work with you. If you decide to

> have a representative, you should find one quickly so that person can start preparing your case.
>
> Many representatives charge a fee only if you receive benefits. Others may represent you for free. Usually, your representative may not charge a fee unless we approve it. We are enclosing a list of groups that can help you find a representative.

(Tr. 192-93, 195; *see also* Tr. 197, 199, 202, 204.)

The Commissioner's Notice of Hearing dated January 17, 2013, also reminded Plaintiff of the right to representation in both English and Spanish: "If you want to have a representative, please find one right away. If you get a representative, you should show this notice to that person." (Tr. 217, 223; *see also* Tr. 228, 230.) A similar Notice of Hearing was sent to Plaintiff on July 30, 2013 and again on October 1, 2013, in both English and Spanish. (Tr. 243, 250, 268, 273; *see also* Tr. 255, 257, 279.)

At the first hearing, held on February 20, 2013, Plaintiff appeared with an interpreter and without a representative. (Tr. 68.) The following colloquy took place:

> ALJ:  . . . I know you came with a friend, but not with an attorney or a paralegal, and you have a right to be represented if you want and I can continue the case one time for you to have more time to get a lawyer or it's my job to make sure that we get all the records to update your file. Do you understand?
> CLMT: I understand a little.
> ALJ: Okay. So you want to go forward or do you want to get a lawyer or do you want your friend to come in?
> CMT: To continue.
> ALJ: You want to continue? All right. Well, let's bring her friend in and let me explain it to her. . . .

6

> . . .
> WIT: Oh, you're telling me what (INAUDIBLE)?
> ALJ: Right, her; that she has a right to have an attorney and she told me she wanted to get a continuance of this hearing to try to get a lawyer.
> WIT: That you want a continuance?
> ALJ: She wants a continuance.
> INT: You want to look for a lawyer?
> CLMT: Maybe it's necessary for me to have a lawyer, maybe to have a --
> ALJ: Well, this is what I'm going to do. The Social Security doctor, who examined you, wrote a diagnosis of rule out borderline intellectual functioning --
> CLMT: What is that?
> ALJ: That means you're not as smart as some people; you have a harder time understanding people and my hearing assistant told me that you had a hard time helping her fill out the form just before you came in the hearing room and that it was your friend that was doing most of the speaking for her. . . .
> . . .
> ALJ: Okay. All right. Anyway, I'm going to send you out for another exam to do IQ testing in Spanish and that will give you time, if you want, to find a lawyer or, if not, you know where this is and we'll do another hearing without a lawyer.

(Tr. 69-72.)

At the supplemental hearing, held on October 22, 2013, Plaintiff again appeared with an interpreter and without a representative. (Tr. 51.) At the beginning of the hearing, when asked if anyone showed her the file, Plaintiff responded, "No, no. What file?" (Tr. 54.) Then, after the ALJ questioned the VE, the following colloquy took place:

> ALJ: Do you have any questions that you want to ask Mr. Barley, Evelyn?
> CLMT: Huh?
> ALJ: Do you have any questions you want to ask Mr. Barley?

7

>CLMT:  I don't know.
>ALJ:  Okay. Then I'm going to -- is there anything else you want to say before I close the record?
>CLMT:  No.

(Tr. 64-65.)

As the record shows, Plaintiff received several notices from the Commissioner explaining the right to representation prior to the hearings. However, when questioned at the first hearing, it does not appear that Plaintiff understood the ALJ's questions regarding representation and what her options were, and/or that the ALJ accurately interpreted Plaintiff's response that she wants "[t]o continue."  Moreover, in light of Plaintiff's mental impairment, which the ALJ acknowledged at the hearing, the ALJ had a heightened duty to ensure that Plaintiff understood her right to representation and the role of an attorney in the proceedings.  The testimony does not demonstrate that the ALJ fulfilled this heightened duty during either hearing.  In fact, the ALJ never inquired about the status of counsel or Plaintiff's decision concerning representation at the supplemental hearing, even though Plaintiff had stated at the first hearing that maybe it was necessary for her to have a lawyer.  Also, there is no evidence that Plaintiff has ever signed a voluntary waiver of her right to representation.  *See* HALLEX I-2-6-52 ("Once the ALJ has determined that the claimant is capable of making an informed choice, he or she will either secure on the record the claimant's decision concerning representation or obtain from the claimant a

8

written waiver of the claimant's right to representation, which will be marked as an exhibit."). In addition, it appears that Plaintiff was confused about the process because she apparently did not review her file in preparation for the hearings. *Cregar v. Astrue*, 2009 WL 383388, *7 (M.D. Fla. Feb. 13, 2009). Based on the foregoing, the Court cannot conclude that Plaintiff knowingly and voluntarily waived her statutory right to representation.

However, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded . . . for further development of the record." *Newberger*, 2008 WL 299012 at *3 (internal citations and quotation marks omitted). This "requires a showing that the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Townsend v. Comm'r of Soc. Sec.*, 555 F. App'x 888, 891 (11th Cir. Feb. 7, 2014) (per curiam) (internal citations and quotation marks omitted).

Plaintiff argues that the ALJ failed to question the VE as to whether and to what extent Plaintiff's violent outbursts, aggression, impulse issues, and hallucinations, as documented in the records of Dr. Ralph Picciotto,[3] Dr. Louis

---

[3] Dr. Picciotto noted that Plaintiff had "auditory and visual hallucinations" (Tr. 416), and diagnosed, *inter alia*, recurrent major depression with psychosis (Tr. 417).

Laguna,[4] and Plaintiff's psychotherapist Irving Noel Perez, MA,[5] as well as the third-party reports of Desiree Ortiz[6] and Daisy Claudio,[7] would erode the reduced range of light work that the ALJ found Plaintiff capable of performing.  The ALJ discussed Plaintiff's hallucinations, rapid mood swings, antisocial and aggressive

---

[4] Dr. Laguna completed an Adult Mental Status and IQ Test on June 5, 2013, noting that Plaintiff was terminated from her job due to conflicts with her supervisor, which culminated in a physical fight between her and her supervisor.  (Tr. 490.)  During the evaluation, Plaintiff endorsed a problem with impulse control and said that when she gets depressed, she also becomes angry, yells, and shouts at people for no obvious reason.  (Tr. 493.)  Dr. Laguna diagnosed major depressive disorder, recurrent, without history of psychotic features, and malingering with respect to the intellectual testing.  (Tr. 494.)  In a Medical Source Statement of Ability to Do Work-Related Activities (Mental), Dr. Laguna opined, *inter alia*, that Plaintiff was moderately limited in the ability to respond appropriately to usual work situations and to changes in a routine work setting.  (Tr. 497.)

[5] In a letter to the Bureau of Disability Determination, dated September 1, 2011, Mr. Perez stated that Plaintiff's "clinical presentation includes symptoms of depression, anxiety, mood swings, violent outbursts, insomnia and suicidal ideations and one suicidal attempt for which she received inpatient treatment."  (Tr. 412.)  His impression was PTSD, delayed, and mood disorder, not otherwise specified.  (*Id.*)  He noted that Plaintiff attended psychotherapy sessions every two weeks.  (*Id.*)  In a letter dated October 20, 2011, Mr. Perez stated that Plaintiff has been a patient in the outpatient mental health clinic since August 2001 and has been receiving individual psychotherapy to attend to symptoms of mood swings with tendencies for impulsive acting out and aggression and symptoms of emotional traumas.  (Tr. 462.)  Mr. Perez noted that Plaintiff "has medical conditions untreated due to lack of health insurance." (*Id.*)  A progress note from Pennsylvania Psychiatric Institute, dated February 21, 2013, indicates that Plaintiff is easily frustrated and angered, irritable, and hears voices.  (Tr. 482.)  It also noted that Plaintiff has been compliant with her medication.  (Tr. 483.)

[6] Ms. Ortiz stated, *inter alia*, that Plaintiff has been getting aggressive daily with others, really angry, frustrated, arguing with everyone all the time, exhibiting attitude problems, and breaking objects.  (Tr. 344-45, 347, 349, 351-52.)

[7] Ms. Claudio reiterated that Plaintiff has been getting aggressive daily with others, really angry, frustrated, exhibiting attitude problems, and breaking objects.  (Tr. 358-59, 363-64.)

behavior, temper problems, destruction of property, crying spells, difficulty getting along with authority figures, friends, family members, and neighbors, but only as part of the discussion of Plaintiff's subjective complaints and the third-party reports of Plaintiff's relative and/or friend (*see* Tr. 36, 38, 42-43), without acknowledging that these symptoms were also documented in the medical reports of Dr. Picciotto, Dr. Laguna, and Mr. Perez, whose opinions the ALJ accorded significant weight. As such, the ALJ did not "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Brown*, 44 F.3d at 934-35.

While an ALJ can discount any medical opinion, in whole or in part, if there are adequate reasons to do so, the ALJ needs to state her reasons for doing so to allow for a meaningful review. Here, it is unclear why the ALJ apparently ignored portions of the medical records that tend to support Plaintiff's allegations of violent outbursts, aggression, impulse issues, and hallucinations, in determining Plaintiff's RFC and questioning the VE. As such, Plaintiff suffered unfairness or clear prejudice by her lack of representation. *See Cowart*, 662 F.2d at 736 (stating that insufficient questioning of the VE indicates that the claimant may have been prejudiced by the lack of counsel); *Griffis v. Astrue*, 619 F. Supp. 2d 1215, 1224 (M.D. Fla. 2008) (citing *Johnson v. Harris*, 612 F.2d 993, 997-98 (5th Cir. 1980)) ("As found by the Fifth Circuit, insufficient questioning of the vocational expert may establish good cause to remand a case for further hearing

and development of the record."). Therefore, because Plaintiff was denied the right to a full and fair hearing, this case is due to be remanded to the Commissioner for further proceedings.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this Order, pursuant to sentence four of 42 U.S.C. § 405(g).

2. The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

3. In the event that benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No.: 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012). This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** at Jacksonville, Florida, on February 15, 2017.

_____
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record